UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHIRLEY SLOCUM, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-12563 |
| INTERNATIONAL PAPER COMPANY, ET AL. | |
| DERRICK SANDERS, ET AL. | NO. 16-12567 |
| VERSUS | |
| INTERNATIONAL PAPER COMPANY, ET AL. | |
| BRENT JARRELL, ET AL. | NO. 16-13793 |
| VERSUS | |
| INTERNATIONAL PAPER COMPANY, ET AL. | SECTION "L" (1) |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Strike Experts from the Phase I Negligence Trial. R. Docs. 341. IP opposes the motion.[1] R. Doc. 350. Having considered the parties' arguments and the relevant law, the Court now rules as follows.

I.     BACKGROUND

The following procedural history has been recited in several of the Court's previous opinions, but in order to place the current issues in context it is restated here. This set of cases arises out of damages allegedly sustained by Plaintiffs due to the discharge of "black liquor" at the Bogalusa Paper Mill on June 10, 2015. R. Doc. 1-2 at 1. Plaintiffs assert claims against Defendant,

---

[1] In its opposition, IP adopts the arguments set forth in its Motion for Clarification regarding the Scope of the Phase I Liability Trial, R. Doc. 340. Accordingly, the Court considers the two filings together for the purposes of this Order & Reasons.

1

International Paper Company ("IP"). Plaintiffs' theories of liability sound in negligence, strict liability, and nuisance. R. Doc. 1-2 at 21.

Black liquor is a by-product of the paper making process. Black liquor is typically recycled in evaporator tanks for repeated use in the pulping process. R. Doc. 1-2 at 3. On June 10, 2015, the sight glass on an evaporator tank containing black liquor ruptured at the Bogalusa Paper Mill, which resulted in a stream of black liquor erupting several feet into the air and dispersing into the atmosphere. R. Doc. 1-2 at 14. The next day, Defendants advised the media that there was a "slight leak" in a process unit that led to the dispersal of diluted black liquor, but that Defendants were "confident that there is no risk to human health or the environment." R. Doc. 1-2 at 14.

Plaintiffs disagree. Plaintiffs contend that the dispersal of black liquor caused personal injury, property damage and/or emotional distress, and argue Defendants are liable for Plaintiffs' damages. R. Doc. 1-2 at 16. For example, the Welch Plaintiffs claim the dispersal caused a black mist to descend on their house, and that the mist stuck the exposed skin of themselves and their children. R. Doc. 1-2 at 18. For a few days after, the Welches "experienced itchy, burning, watery eyes, [and] headaches with throat and upper respiratory irritation." R. Doc. 1-2 at 18. The Welches concede that their physical symptoms cleared "in a short period of time," but argue they continue to suffer emotional distress and fear about a reoccurrence of the event. R. Doc. 1-2 at 18. Other Plaintiffs claim similar damages.

On May 21, 2019, the Court certified this matter as an issue-based class action under Rule 23(c)(4) of the Federal Rules of Civil Procedure. R. Doc. 207. The class consisted of "[a]ll persons or entities who were physically present or owned property within Bogalusa, Louisiana, Parish of Washington on June 10, 2015, and who sustained injuries or damages as a result of the discharge of 'black liquor' at the Bogalusa Paper Mill owned by the International Paper Company." *Id.* The

class was broadly described to allow the parties an opportunity to prepare a public a notice to determine the extent and nature of the potential claims.

After some initial discovery, a two-day hearing, and a site visitation to Bogalusa, Louisiana with the attorneys for the involved parties, the Court drew more precise boundaries for the class:

- Northern Boundary: Derbigny Street to Austin Street, north on Austin Street to Bayer Street, east on Bayer Street
- Eastern Boundary: Columbia Street to Saba Street, east on Saba Street to Florence Avenue, south on Florence Avenue to North Avenue, east on North Ave to Ruby Road, south on Ruby Road
- Southern Boundary: St Lewis Street to New Orleans Street to West 12th Street
- Western Boundary: Avenue F to Willis Avenue to Madison Street

These boundaries included both potential personal injury claims and potential property damage claims.[2] *See* R. Doc. 266. The Court also determined that 773 gallons of black liquor were released during the event, which lasted from 6:40 p.m. to 7:18 p.m. *Id.* at 9, 11. No appeal was taken from this class certification ruling pursuant to Rule 23(f).

The Court next bifurcated the case into liability and damages phases. The liability phase, with the consent of the parties, was to be handled by the Court without a jury, and the damages phase, if necessary, was to be handled by multiple juries for the various cases.

II.     **THE PHASE I LIABILITY TRIAL**

The sole issue to be resolved at the liability phase is whether the Incident on Jun 10, 2015 at the Bogalusa Paper Mill causing "black liquor" to be released from the third effect evaporator

---

[2] The Court found that the boundaries encompasses the area in which the deposition of black liquor were at least .01 grams per square meter, which is the maximum range in which any individual could have suffered property damage and nuisance claims. R. Doc. 266 at 16. The Court further recognized that airborne concentrations, rather than deposition raters, are the relevant metric for physical injuries. Accordingly, the maximum area within which individuals could have experienced adverse health effects is the area in which airborne concentrations were at least 1 mg/m$^3$. *Id.* at 15.

tank was due to the negligence of the Defendant, International Paper Company. R. Doc. 340-2

(Transcript of June 9, 2021 Hearing). [3] Specifically, the relevant common liability issues include:

1. Whether Defendants owed Plaintiffs a general duty.
2. Whether Defendants' conduct failed to conform to the general standard of care.
3. Whether the scope of Defendants' duty includes preventing the type of harm Plaintiffs allegedly suffered.
4. Whether Defendant had *garde* of the evaporator when the rupture occurred on June 10, 2015.
5. Whether Defendant knew, or should have known, of the ruin, vice or defect in the evaporator dome sight glass that broke on the evening of June 10, 2015.
6. Whether Defendant failed to exercise reasonable care in maintaining the evaporator dome sight glass that broke on the evening of June 10, 2015.
7. Whether Defendant had discovered the unsafe condition prior to the incident.
8. Assuming Defendant had discovered the unsafe condition prior to the incident, whether Defendant warned potential victims of its existence.
9. Whether the incident arose out of work at the Mill.
10. Whether Defendant failed to exercise reasonable care in performing its work at the Mill.

*See* R. Doc. 207 at 17. These issues have not changed since the Class Certification Order on May 19, 2019. What has changed, however, is Plaintiffs' requested relief. Plaintiffs have withdrawn their requests for declaratory or injunctive relief. As a result, certain factual determinations no longer need to be decided.[4]

After the liability phase, the next or second phase of this case, if necessary, will involve the presence, nature, and extent of damages, if any, which are causally related to this negligence. *See Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 628 (5th Cir. 1999) (approving a bifurcated trial plan similar to this and describing other, similar bifurcated proceedings). Such issues which are germane to the damages phase will be: the contends of the "black liquor;" the

---

[3] IP incorrectly characterizes this hearing as a status conference, when in fact, it was a hearing on Plaintiffs' motion to set the scope of the liability trial. The Court rules orally on the record, giving reasons for its decision, which is a practice both sanctioned by the Federal Rules of Civil Procedure and extensively used by district courts. *See* 9c Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2580 (3d ed. 2008).

[4] The relevant factual determinations related to Plaintiffs' former claims for injunctive relief are as follows: (1) whether Defendant intentionally misrepresented the nature of the release to the public and governmental agencies; (2) whether Defendant should be required to disclose additional information regarding this incident and black liquor in general; and (3) whether Defendant should be required to develop and release a response and remediation plan regarding the incident and a preparedness plan for any future accidents.

amount, concentration, and location of airborne black liquor; and the amount, concentration, and location of the deposition of the black liquor. In addition, other issues at this phase will involve general causation, that is to say, whether an exposure of the amount of the product contents can cause the alleged damage, and if so, specific causation, namely whether the complained damages were in fact caused by such exposure.

The Court has instructed the parties to begin to group the cases with like claims into sub-classes to aid in the efficient resolution of these issues. R. Doc. 331 at 2. Accordingly, the Court finds Defendant's claim that the current trial plan will "force the parties – and the Court – to compound the waste by litigating [common issues] repeatedly in every plaintiff's case" to be without merit. R. Doc. 350 at 6.

### III. PRESENT MOTION

Defendants have listed six experts which they intent to call during the first phase of this litigation, scheduled to begin on August 30, 2021. Plaintiffs now move to strike Defendant IP's six experts, arguing that they exclusively opine on individual plaintiff issues, general causation, and damages. Doc. 341-1 at 2. Plaintiffs argue that the export reports submitted by IP do not pertain to negligence, despite the Court's instructions regarding the nature and scope of the Phase I trial, and therefore must be excluded from the bench trial as irrelevant under Federal Rules of Evidence 401-403. *Id*. at 9-10.

IP opposes the motion, arguing that it designated these experts in response to Plaintiffs' expert designations and in accordance with the Class Certification Order. IP further argues that the resolution of all common issues must occur in Phase I to avoid waste. *Id.* at 6. IP urges the Court to resolve factual issues regarding the airborne concentrations and surface depositions in specific

geographical areas, the constituents of the black liquor, and whether it is harmful to plaintiffs or their property in Phase I. *Id*. at 10-12.

## IV. LAW & ANALYSIS

### a. Applicable Law

The present motion seeks the exclusion of the testimony and expert reports of IP's six experts on the basis that they are al both irrelevant and prejudicial pursuant to Federal Rules of Evidence 401, 402, and 403. R. Doc. 341-1 at 9. Rule 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Rule 402 states that irrelevant evidence is inadmissible. Federal Rule of Evidence 403 states that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Federal Rule of Evidence 702 and the *Daubert* framework also require the trial court to make a preliminary assessment of the relevance of expert testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Burleson v. Texas Dep't of Crim. Just.,* 393 F.3d 577, 584 (5th Cir. 2004). The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). Specifically, Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As the United States Supreme Court has stated, "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert* 509 U.S. 579 at 597.

### b. Discussion

Here, the anticipated testimony of IP's experts is as follows: (1) Rick Crowsey, Ph.D., a forensic geographer, would testify as to the locations of individual plaintiffs on the day of the incident, in addition to pinpointing air and deposition concentrations of Black Liquor, R. Doc. 341-3 at 6; (2) Douglas Austin Swift, M.D., M.S.P.H. would provide an occupational and environmental medicine perspective regarding potential effects from an exposure to Black Liquor vapor, R. Doc. 341-4 at 8-9; (3) Gale Hoffnagle, C.C.M, Q.E.P. would analyze the path, air concentrations, and deposition of the Black Liquor released from the Bogalusa Mill, R. Doc. 341-5 at 4; (4) Glenn Milner, Ph.D., would opine on the concentration levels of Black Liquor at which adverse health effects may occur following a short-term exposure, R. Doc. 341-6 at 9; (5) Mark Rockel, Ph.D., an environmental economist, would testify regarding the feasibility of Plaintiffs' damage claims pertaining to claims for trees, plants, paint and other similarly related damages. R. Doc. 341-7 at 3; and (6) Timothy Myers, Ph.D., P.E., would review Plaintiffs' expert calculations of particular dose or exposure to Plaintiffs within the class boundary. R. Doc. 341-8 at 8.

The Court, having carefully examined Defendants' expert reports, concludes that these experts must be deferred until Phase II of the litigation. IP has failed to demonstrate how its proposed experts' testimony is relevant as to whether the June 10, 2015 Incident was due to the negligence of the Defendant, and instead, seeks to broaden the nature and the scope of the Phase I trial—a request which the Court has previously rejected. *See* R. Doc. 341-2; *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (noting that the burden of demonstrating relevance rests with the party seeking to present the evidence). IP's proposed expert testimony solely pertains to issues of general causation, damages, and exposures of individual plaintiffs, and

accordingly, the Court finds that it would not assist the trier of fact to understand the determinative facts at issue during the Phase I trial under Federal Rule of Evidence 702 and *Daubert.*

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED THAT** Plaintiffs' Motion to Strike, R. Doc. 341, is **GRANTED.**[5] Defendant's experts are to be **DEFERRED** until Phase II of this litigation.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgement that Black Liquor can be Corrosive to Metals; Motion for Partial Summary Judgment that Black Liquor can Cause Staining to Property; Motion for Partial Summary Judgment that Black Liquor can Cause Adverse Health Effects; Motion for Partial Summary Judgment that Black Liquor can Cause Damage to Vegetation and Defendant's Motion for Partial Summary Judgment Requesting Dismissal of Claims for Damage to Vegetation are **DISMISSED** without prejudice to be re-urged after Phase I.[6] R. Docs. 352; 354; 355; 360; 361.

**IT IS ORDERED** that the motions for leave to file documents related to R. Docs. 355 and 361 under seal is hereby **DISMISSED** as moot.[7]

New Orleans, Louisiana, this 15th day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE

---

[5] This ruling also applies to Plaintiffs' identical Motions to Strike Experts in *Sanders et al v. International Paper Company*, No. 16-12567, R. Docs. 268, and in *Jarrell et al v. International Paper Company*, No. 16-12793, R. Docs. 277.

[6] This ruling also applies to Plaintiffs' and Defendant's identical Motions in *Sanders et al v. International Paper Company*, No. 16-12567, R. Docs. 279; 280; 281; 285; 286, and in *Jarrell et al v. International Paper Company*, No. 16-12793, R. Docs. 288; 290; 292; 296; and 297.

[7] This ruling also applies to Plaintiffs' identical Motions for Leave to File Under Seal in *Sanders et al v. International Paper Company*, No. 16-12567, R. Docs. 291; 292 and in *Jarrell et al v. International Paper Company*, No. 16-12793, R. Docs. 302; 303.